Plaintiff instituted this suit to recover $1,832.95 with legal interest thereon from August 5, 1941, until paid. It contends that said sum is due for 238.86 tons of rock asphalt at a price of $7.40 per ton and 467 gallons of cut back asphalt for priming at 14 cents per gallon, furnished under a contract it entered into with the Lincoln Parish School Board for the purpose of hard surfacing certain streets and roads around the new High School building in Ruston, Louisiana. Plaintiff further alleged that defendant tendered it $1,598.83 in full payment of its claim but that it refused to accept the tender.
Defendant answered admitting it was indebted unto plaintiff in the sum of $1,306.47 for rock asphalt and did not contest the amount claimed for cut back asphalt for priming, admitting, therefore, that it owed plaintiff $1,371.85. In defense of the claim defendant pleaded the terms and conditions of plaintiff's bid based upon the plans and specifications for the job which provided for 85 1/2 pounds of rock asphalt per square yard and alleged that only 4130 square yards were surfaced, making a total of 176.51 tons of material which were used at a price of $7.40 per ton, amounting to $1,306.47.
Defendant further alleged that plaintiff warranted in its bid that the material would yield 21 square yards of one-inch paving per ton and that the cost of paving per square yard would be .35 1/2. It further set up that the laying of the material was to have been supervised by plaintiff and that if more material was used than was intended by the parties under the terms and conditions of the plans and specifications and accepted bid, the defendant was not obligated for the excess amount.
On these issues the case was tried below and there was judgment for plaintiff in the amount sued for with 5% per annum interest thereon from October 25, 1941, until paid, and defendant is prosecuting this appeal from that judgment.
In the specifications, after describing in detail the kind of rock asphalt to be used in the project, is provided: "The material shall be crushed and graded to meet the following requirements for paving 1 inch in thickness, or 85 1/2 pounds per square yard."
The bid submitted by plaintiff and accepted by defendant is as follows: *Page 119 
"In accordance with your specifications and instructions we hereby submit the following bid on materials for asphalt paving around the High School in Ruston:
"Valdemix Rock Asphalt $7.40 per ton of 2000 pounds. Railroad weights to govern, delivered on the work as needed. This material will yield 21 square yards to ton when compacted to one inch thickness, therefore will cost approximately 35 1/2 cents per square yard of paving.
"Inverted Asphalt, better known as Road Rite, at $6.00 per ton of 2000 pounds, delivered on the work as needed. This material will yield 17 square yards of one-inch paving to ton of mixture, making cost per yard of paving approximately 35 1/2 cents per square yard.
"If either of the above bids are accepted we will supervise laying of the material and furnish all special tools, such as roller, guage strips, rakes, etc., at no additional cost.
"R.C.-1- cut back asphalt for priming the base at .14 per gallon delivered on the work in drums as needed. The type of base now being used in City of Ruston requires one-fifth of a gallon to one square yard of paving, thus making a cost of approximately three cents per square yard."
There is no dispute over the amount of materials furnished by plaintiff and used in constructing the project. It is defendant's contention that more material was used than was necessary; that the rock asphalt is of an average of 1 1/2 inches thick when the specifications and bid called for only one inch thickness. That since plaintiff agreed to supervise the work it should have seen that not more asphalt was used than the specifications called for and that if more was used than the specifications called for, the loss should fall on plaintiff.
The streets were constructed with WPA labor under the supervision of an engineer employed by defendant. The specifications upon which the bid was based contain among other provisions relative to the supervision by the engineer the following under the heading, —
"Specifications for Limestone Rock Asphalt Materials".
"No storage upon the ground will be permitted, except in emergency, and then only with the written consent of the engineer, who shall be the judge as to the manner of storage and the amount of material to be rejected, due to having come in contact with earth or other objectionable foreign matter.
* * * * *
"* * * This item shall consist of a wearing surface composed of a one-inch course of a compacted mixture of mineral aggregate and asphaltic material which shall be either Limestone Rock Asphalt or Inverted Emulsified Asphalt, and shall be constructed on the previously completed and approved subgrade, sub-base course or base course.
"Materials (To be bid on per gallon)."
"Tack coat. Before the asphaltic mixture is laid the surface upon which it is to be placed shall be thoroughly cleaned to the satisfaction of the Engineer and shall be given a uniform tack coat application of the emulsified asphalt, applied as directed by the Engineer, at the rate of 0.10 gallon per square yard of surface. The emulsified asphalt used for this tack coat may, upon written instructions from the Engineer, be further cut back by the addition of not to exceed 15 per cent of an approved grade of gasoline by volume."
At the bottom of the typed or mimeographed specifications of which the above quotations are a part, is the following: "Delivery will not be accepted until base is approved by Engineer."
The record makes it clear that plaintiff had nothing to do with constructing the base. After same was constructed and apparently approved by the engineer it was notified that delivery was expected; that the asphalt had to be laid by July 16th in order to get WPA help. Mr. DeJersey, a member of plaintiff partnership who had this job in charge, was busy in South Louisiana at the time and could not personally look after the putting down of the asphalt. He secured an experienced man and placed him in charge. Although the base had been prepared under the supervision of plaintiff's engineer, it was not built to take one-inch asphalt, some places being low and had to be filled in with asphalt in order to make an even surface. To have built the base up with gravel or clay would require several months' delay in order for it to set properly.
Mr. DeJersey testified that the base was supposed to have been ready several months before but when he inspected it at that time he found it was not a proper base and notified a member of the School Board and that more gravel was then spread on *Page 120 
the base but it was still uneven. The curb and gutter had already been built and the asphalt surfacing had to conform therewith or the job would not have been accepted. The result was that more material was used to complete the job to the satisfaction of the School Board and its engineer than was called for in the specifications. This was done to their satisfaction, as is testified to by the Superintendent of Schools of Lincoln Parish. He testified that the engineer approved the work when completed; that the material and work were satisfactory and done in accordance with plans and specifications.
Defendant contends now that plaintiff warranted that each ton of its material would cover a certain area when spread to a thickness of one inch. Plaintiff still contends it will do just what its bid said it would do in that respect. Plaintiff also agreed to supervise the laying of its material, which it did. It did not warrant that the base furnished by defendant and approved by its engineer would be constructed to take only one inch in thickness in asphalt. If defendant had furnished a proper base and plaintiff then used more material than was necessary, defendant would have a just complaint but under the undisputed facts of this case its complaint is without merit.
The judgment of the lower court is correct and it is affirmed with costs.
TALIAFERRO and HAMITER, JJ., concur.